FILED
JEANNE A. NAUGHTON, CLERK
JAN 09 2019
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY _____ DEPUTY

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>**MICHAEL S. GALLICHIO and<br>BARBARA A. GALLICHIO,**<br><br>Debtors. | Case No.:   17-27512 (JKS)<br><br>Judge:   Sherwood |

### DECISION AND ORDER RE: U.S. TRUSTEE'S MOTION
### TO DISMISS CASE FOR ABUSE

The relief set forth on the following pages, numbered three (3) through fourteen (14), is hereby **ORDERED**.

_____
HONORABLE JOHN K. SHERWOOD
UNITED STATES BANKRUPTCY JUDGE

Dated:   January 9, 2019

**Page 2**
Debtor: Michael S. Gallichio and Barbara A. Gallichio
Case No.: 17-27512 JKS
Caption of Order: **Decision and Order Re: U.S. Trustee's Motion to Dismiss Case for Abuse**

## APPEARANCES

**McNally & Busche, L.L.C.**
Stephen B. McNally, Esq.
93 Main Street, Suite 201
Newton, New Jersey 07860
*Counsel for Debtors*


**McElroy, Deutsch, Mulvaney & Carpenter**
Eric R. Perkins, Esq.
570 Broad Street, Suite 1500
Newark, New Jersey 07102
*Chapter 7 Trustee*


**Office of United States Trustee**
Lauren Bielski, Esq.
One Newark Center, Suite 2100
Newark, New Jersey 07102
*Counsel for the United States Trustee*

**Page 3**

| | |
|---|---|
| Debtor: | Michael S. Gallichio and Barbara A. Gallichio |
| Case No.: | 17-27512 JKS |
| Caption of Order: | **Decision and Order Re: U.S. Trustee's Motion to Dismiss Case for Abuse** |

**WHEREAS:**

1. On August 29, 2017, Michael S. Gallichio ("Mr. Gallichio") and Barbara A. Gallichio ("Mrs. Gallichio") (collectively "Debtors") filed this Chapter 7 bankruptcy case. On September 25, 2018, the United States Trustee (the "UST") filed a motion to dismiss the case for abuse under § 707(b) of the Bankruptcy Code. [Doc. 57]. Debtors filed opposition to the motion and a hearing was conducted on November 27, 2018 where this Court reserved decision pending review of supplemental filings to be submitted by the parties.

2. The Court has reviewed the pleadings and the arguments of counsel, and for the reasons set forth below (and discussed on the record at the hearing), the Court finds that the Debtors' financial situation demonstrates abuse and the UST's motion to dismiss should be granted in part as set forth herein.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

3. In the schedules filed with their petition, the Debtors disclosed interests in five automobiles, a motorcycle and a boat. The value of the Debtors' personal property listed in the petition is more than $160,000. Most of this value is attributable to their interests in 401(k) and deferred compensation accounts ($118,370). They own a home in Stanhope, New Jersey which they value at $265,000 and is subject to a mortgage of slightly over $300,000. The Debtors apparently intend to keep the home and pay the undersecured mortgage outside of the bankruptcy process. Their monthly mortgage payment is $2,377.10. The Debtors also listed unsecured non-priority debts totaling $60,592.33, most of which is due on account of credit card purchases.[1]

---

[1] Petition and Schedules, ECF No. 1.

Case 17-27512-JKS    Doc 67    Filed 01/09/19    Entered 01/10/19 10:18:30    Desc Main
Document      Page 4 of 14

**Page 4**
Debtor:          Michael S. Gallichio and Barbara A. Gallichio
Case No.:        17-27512 JKS
Caption of Order: **Decision and Order Re: U.S. Trustee's Motion to Dismiss Case for Abuse**

4. Putting this aside for the moment, much of the emphasis in the UST's motion to dismiss was on the Debtors' monthly income (Schedule I) and expenses (Schedule J). On June 19, 2018, the Debtors amended these schedules. Debtors' Amended Schedule I indicates that Mr. Gallichio earns $6,919.19 gross monthly income, but is "taking home" only $2,697.49 net monthly income. Monthly deductions to his gross income include $507.87 for contributions to a retirement plan, $559.63 for repayment of a retirement fund loan and $641.12 for contributions to a deferred compensation plan. Debtors' Amended Schedule I also indicates Mrs. Gallichio earns $6,883.33 gross monthly income, but only $3,828.87 net monthly income. Monthly deductions to her gross income include $1,032.50 for contributions to a retirement plan. Debtors' Amended Schedule J includes monthly deductions of $433 for life insurance and $598 for vehicle insurance. Accounting for all deductions, the Debtors' amended schedules indicate a monthly deficit of $815.47.[2]

5. But the UST's motion suggests that this deficit could easily be a surplus. The motion asserts, among other things, that: (1) Debtors inflated their monthly payments for life insurance premiums because they are also repaying a loan against their life insurance policy; (2) Debtors are unnecessarily insuring two of their five vehicles because there are only three adults of driving age in the household; (3) Debtors can eliminate their payments towards boat and motorcycle insurance; (4) Debtors provide no proof that Mr. Gallichio's repayment of the retirement loan is required; (5) Mr. Gallichio's payments to his deferred compensation plan can be eliminated; and (6) Mrs. Gallichio's payments to her 401(k) are excessive and should be reduced from 15% to 7.5% of her

---

[2] Amended Schedules, ECF No. 44.

Case 17-27512-JKS    Doc 67    Filed 01/09/19    Entered 01/10/19 10:18:30    Desc Main
                               Document      Page 5 of 14

Page 5
Debtor:            Michael S. Gallichio and Barbara A. Gallichio
Case No.:          17-27512 JKS
Caption of Order:  **Decision and Order Re: U.S. Trustee's Motion to Dismiss Case for Abuse**

income. The UST suggests that by adjusting these amounts, Debtors would have $877.73 monthly disposable income to fund a Chapter 13 plan.[3]

6. On October 31, 2018, Debtors filed a certification of Mrs. Gallichio in opposition to the UST's motion. In her certification, Mrs. Gallichio admits to overstating Debtors' life insurance premiums, but clarifies that they were making payments in the amount listed in their schedules to pay off the life insurance loan more quickly. Additionally, she concedes that payments to the life insurance loan should not be considered when conducting a Chapter 13 analysis resulting in a monthly adjustment of $280.33. The Debtors reduced their automobile insurance coverage to four vehicles resulting in a $102.17 reduction to insurance premium payments. However, Mrs. Gallichio suggests the reduction will be short lived once Debtors' youngest daughter is added to their policy. Although there are only three adults currently living in the Debtors' home, Mrs. Gallichio claims the fourth vehicle is used by Debtors' older daughter who does not reside with them and coverage for this vehicle accounts for $108.92 of their insurance premiums. Mrs. Gallichio takes the position that insurance premiums for their boat and motorcycle, in the amount of $108.67 per month, are not unreasonable. She also contends Mr. Gallichio's retirement loan repayment is mandatory and that his deferred compensation contributions are reasonable. She asserts her 401(k) has only amassed $46,000 because she was forced to make withdrawals to help raise and educate her children. She explains that she contributes 15% of her income towards her 401(k) to catch up on retirement savings, but she concedes that 10% may be more reasonable.[4] Essentially, the Debtors agree with some of the adjustments proposed by the UST, but not others. Based on the agreed adjustments, the Debtors say that they still have a monthly deficit of $191.14.

---

[3] Certification of Joseph Kern in Support of Motion to Dismiss, ECF No. 57, at ¶¶ 21, 22, 24-26, 29 and 30.
[4] Certification of Barbara A. Gallichio, ECF No. 61, at ¶¶ 15-19 and 21-25.

Case 17-27512-JKS    Doc 67    Filed 01/09/19    Entered 01/10/19 10:18:30    Desc Main
Document    Page 6 of 14

**Page 6**
Debtor:         Michael S. Gallichio and Barbara A. Gallichio
Case No.:       17-27512 JKS
Caption of Order:   **Decision and Order Re: U.S. Trustee's Motion to Dismiss Case for Abuse**

7. The Court has prepared the chart below to illustrate the contested issues and their financial impact on the Debtors' income and expenses.

| DEBTORS' SCHEDULE I INCOME -- $6,526.36/SCHEDULE J EXPENSES -- $7,341.83 RESULT -- $815.47 DEFICIT |||
|---|---|---|
| ISSUE | UST | DEBTORS |
| Voluntary Retirement Plan Contributions (Schedule I) | Mrs. Gallichio's monthly contribution of $1,032.50 is excessive. | <u>Agree to reduce contribution by $344</u> – now $688.50. |
| Repayment of Retirement Fund Loans (Schedule I) | $599.63 per month is excessive when considering that Mr. Gallichio pays a $507.87 mandatory contribution and voluntarily contributes $641.12 per month to deferred compensation. | Loan repayment is mandatory. Deferred compensation is to a qualified retirement plan. |
| Deferred Compensation (Schedule I) | $641.12 is excessive in light of other retirement plan contributions above. | Payments are to a qualified retirement plan. |
| Insurance Expense (Schedule J) | Payment of $433 is inflated by $283 per month. | <u>Agree to adjustment of $280.33 per month</u> – now $152.47. |
| 5 Vehicle Insurance Expense (Schedule J) | $547.92 per month is excessive. Debtors do not need 5 vehicles. Should be cut by $219. | Payment is now $495 per month but going back up when daughter is added to policy. Cars are old and need to be replaced or repaired. |
| Boat and Motorcycle Insurance (Schedule J) | Eliminate entirely. | Cost is $108 per month and not unreasonable. |
| Car Payment of $358.57 (Schedule J) – car has been paid off | | Car has over 100,000 miles and will have to be replaced. |

Case 17-27512-JKS    Doc 67    Filed 01/09/19    Entered 01/10/19 10:18:30    Desc Main
Document    Page 7 of 14

Page 7
Debtor:           Michael S. Gallichio and Barbara A. Gallichio
Case No.:         17-27512 JKS
Caption of Order: **Decision and Order Re: U.S. Trustee's Motion to Dismiss Case for Abuse**

Again, with the agreed adjustments set forth above for Mrs. Gallichio's retirement plan contribution and insurance, the Debtors' monthly deficit is still $191.

8. The UST contends that more adjustments are necessary. On November 21, 2018, the UST filed a supplemental certification of Joseph Kern in response to Debtors' opposition claiming, among other things, that: (1) the documents produced by the Debtors do not state that failing to repay Mr. Gallichio's retirement fund loan will result in termination of employment and thus $559.63 should be added back to the Debtors' monthly income; (2) the monthly $90.41 deduction for Mrs. Gallichio's retirement loan repayments should have ended by September 2018; (3) Debtors admit Mr. Gallichio's contributions to his deferred compensation plan are voluntary and thus should be added back to Debtors' net monthly income; (4) "Debtors admit a reduction of [Mrs. Gallichio's] voluntary retirement fund contribution would be appropriate" (Mr. Kern also noted Mrs. Gallichio's 401(k) contributions "were 2% of her income in March of 2017, increased to 8% of her income in April and May of 2017, then increased to 15% of her income in June of 2017, just two months prior to the [p]etition [d]ate"); and (5) Debtors admit they are only paying $152.47 towards insurance premiums and thus the differential should be included in their excess income. Accounting for these adjustments, Mr. Kern suggests Debtors would have a monthly surplus of $1,100.02 totaling $66,001.20 over 60 months, which, not accounting for administrative fees, is enough to pay unsecured creditors in full.[5]

9. In the Court's view, the major items that could "move the needle" from negative monthly cash flow to a surplus are Mrs. Gallichio's voluntary retirement contribution (now $688) and the combination of Mr. Gallichio's retirement loan repayment ($559.63) and his voluntary deferred

---

[5] Supplemental Certification of Joseph Kern, ECF No. 64, at ¶¶ 4, 6, 8-10, 12, 13 and 15-17.

| | |
|---|---|
| Debtor: | Michael S. Gallichio and Barbara A. Gallichio |
| Case No.: | 17-27512 JKS |
| Caption of Order: | **Decision and Order Re: U.S. Trustee's Motion to Dismiss Case for Abuse** |

compensation deduction ($641.12). There is no doubt that bankruptcy law allows debtors to save for retirement. The issue here is whether these Debtors should be asked to scale back their retirement savings and/or cut other monthly expenses in an effort to make some payment on account of their unsecured debts. At the November 27, 2018 hearing, the Court requested supplemental pleadings from the parties to address when Mr. Gallichio began contributing to his deferred compensation plan and other legal issues. From a factual standpoint, the only relevant additional fact was that Mr. Gallichio began contributing to his deferred compensation plan on March 26, 2004. But Mr. Gallichio does not disclose whether he has maintained the same contribution percentage since 2004 or whether he increased his contributions prior to filing his petition.[6]

**Abuse**

10. Under 11 U.S.C. § 707(b), "[a]fter notice and a hearing, the court . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter."[7] The Bankruptcy Code has a "Means Test" under 11 U.S.C. § 707(b)(2)(A)(i) which sets up a presumption of abuse in certain financial circumstances. The UST does not contend that there is a presumption of abuse in this case. Thus, the court must consider: (1) "whether the debtor filed the petition in bad faith; or (2) [whether] the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse."[8]

---

[6] Certification of Michael S. Gallichio, ECF No. 66, at ¶ 4.
[7] 11 U.S.C. § 707(b)(1).
[8] 11 U.S.C. § 707(b)(3).

Case 17-27512-JKS    Doc 67    Filed 01/09/19    Entered 01/10/19 10:18:30    Desc Main
Document    Page 9 of 14

Page 9
Debtor:         Michael S. Gallichio and Barbara A. Gallichio
Case No.:       17-27512 JKS
Caption of Order:    **Decision and Order Re: U.S. Trustee's Motion to Dismiss Case for Abuse**

11. A debtor's ability to repay debts from future earnings is a primary consideration in the totality of the circumstances analysis under § 707(b)(3)(B).[9] The debtor's financial condition should be considered at the time of the hearing on the motion to dismiss.[10]

12. Although BAPCPA's amendment to § 707(b) substitutes "substantial abuse" with mere "abuse" signifying a less stringent standard, courts continue to consider pre-BAPCPA factors, *e.g.*, "whether the bankruptcy petition was filed in bad faith; . . . whether the debtor is eligible for adjustments of his [or] [her] debts through Chapter 13 of the Bankruptcy Code; . . . and whether the debtor's expenses can be reduced significantly without depriving him [or] [her] of adequate food, clothing, shelter and other necessities.[11]

13. Where abuse is found, the court has the discretion under § 707(b)(1) to convert the case to Chapter 13 if the debtor consents. Thus, the Court considers how the Debtors' income and expenses reflected in the Amended Schedules I and J would be treated in a Chapter 13 case.

**Property of the Estate and Disposable Income Under Chapter 13**

14. First, it is clear that the Debtors' retirement loan repayments would be proper adjustments to their disposable income in a Chapter 13 case under § 1322(f) of the Bankruptcy Code.

15. The second and more difficult question concerns treatment of the Debtors' voluntary 401(k) and deferred compensation payments in a Chapter 13 case. Section 541(b)(7) of the Bankruptcy Code excludes from property of a debtor's estate "any amount . . . withheld by an employer from the wages of employees (or received by an employer from employees) for payment as contributions

---

[9] *In re Jordan*, 428 B.R. 430, 433 (Bankr. N.D. Ohio 2010); *In re Norwood-Hill*, 403 B.R. 905, 912 (Bankr. M.D. Fla. 2009); *In re Lamug*, 403 B.R. 47, 55 (Bankr. N.D. Cal. 2009).
[10] *In re Pennington*, 348 B.R. 647, 651 (Bankr. D. Del. 2006); *see also In re Pittman*, 506 B.R. 496, 499 (Bankr. S.D. Ohio 2014) ("The totality of the circumstances includes reviewing debtors' pre- and post-petition financial circumstances.").
[11] *In re Lanza*, 450 B.R. 81, 87 n.7 (Bankr. M.D. Pa. 2011).

**Page 10**

| | |
|---|---|
| Debtor: | Michael S. Gallichio and Barbara A. Gallichio |
| Case No.: | 17-27512 JKS |
| Caption of Order: | **Decision and Order Re: U.S. Trustee's Motion to Dismiss Case for Abuse** |

to-- an employee benefit plan . . . [and] a deferred compensation plan; . . . except that such amount [] shall not constitute disposable income as defined in section 1325(b)(2)."[12] Thus, it would seem that the Debtors' retirement and deferred compensation contributions are excluded from property of the estate. Since § 103(a) of the Bankruptcy Code makes § 541 applicable to Chapter 13 cases, these contributions would be excluded from "property of the estate" in a Chapter 13 context.

16. To confirm a Chapter 13 plan, the plan must provide "that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan."[13] Section 1325(b)(2) of the Bankruptcy Code defines disposable income as "current monthly income received by the debtor . . . less amounts reasonably necessary to be expended for the maintenance or support of the debtor."[14]

17. The issue here is whether voluntary contributions to retirement plans and/or deferred compensation plans should be excluded from 11 U.S.C. § 1325(b)(2)'s definition of disposable income. As discussed, § 541(b)(7) of the Bankruptcy Code excludes from property of a debtor's estate contributions to an employee benefit plan and a deferred compensation plan. Section 541(b)(7) also has the following phrase in subsections (A) and (B) which is apparently designed to clarify the exclusion of retirement fund contributions from property of the estate in Chapter 13 cases – "*. . . except that such amount [] shall not constitute disposable income as defined in section 1325(b)(2).*"[15] This language has come to be known as the "hanging paragraph" and has caused some confusion as it has been applied in Chapter 13 cases.

---

[12] 11 U.S.C. § 541(b)(7).
[13] 11 U.S.C. § 1325(b)(1)(B).
[14] 11 U.S.C. § 1325(b)(2)(A)(i).
[15] 11 U.S.C. § 541(b)(7)(i).

Case 17-27512-JKS    Doc 67    Filed 01/09/19    Entered 01/10/19 10:18:30    Desc Main
Document    Page 11 of 14

**Page 11**
Debtor:            Michael S. Gallichio and Barbara A. Gallichio
Case No.:          17-27512 JKS
Caption of Order:  **Decision and Order Re: U.S. Trustee's Motion to Dismiss Case for Abuse**

18. In its report on BAPCPA relating to § 541(b), the House Judiciary Committee reported:

> Section 323 of the Act amends section 541(b) of the Bankruptcy Code to exclude as property of the estate funds withheld or received by an employer from its employees' wages for payment as contributions to specified employee retirement plans, deferred compensation plans, and tax-deferred annuities. Such contributions do not constitute disposable income as defined in section 1325(b)(2) of the Bankruptcy Code.[16]

There is disagreement in the courts as to whether § 541(b) shields only pre-petition retirement contributions or post-petition contributions as well. If the § 541(b)(7) exclusion applies to a Chapter 13 debtor's post-petition earnings, debtors will be encouraged to "load up" their retirement contributions during their Chapter 13 cases thereby keeping more of their future disposable income for themselves and paying less to their creditors. On one hand, this could be considered abuse of bankruptcy law, but on the other, there is no doubt that Congress has sought to protect and encourage retirement savings by enacting § 541(b)(7). Many courts have wrestled with this issue since BAPCPA was enacted in 2005. Three different approaches have been developed by the courts and they are well summarized by a Virginia bankruptcy court decision, *In re Cantu*, 553 B.R. 565 (Bankr. E.D. Va. 2016). The three approaches are:

1. Debtors may not make post-petition voluntary contributions to their retirement plans (the "Prigge View").

2. Debtors may continue to make post-petition voluntary contributions to their retirement plans if they were making contributions in comparable amounts pre-petition (the "Seafort BAP View").

---

[16] HR Rep. No. 31, 109th Cong., 1st Sess 323 (2005).

Case 17-27512-JKS    Doc 67    Filed 01/09/19    Entered 01/10/19 10:18:30    Desc Main
Document    Page 12 of 14

Page 12
Debtor:            Michael S. Gallichio and Barbara A. Gallichio
Case No.:          17-27512 JKS
Caption of Order:  **Decision and Order Re: U.S. Trustee's Motion to Dismiss Case for Abuse**

    3. Debtors may make post-petition voluntary contributions to their retirement plans so long as the contributions are within the limits permitted by the employee benefit plan but subject to a lack of good faith objection under § 1325(a)(3) where an abusive case is presented (the "Johnson View").

*Id.* at 572-75.

19. Though each of these approaches has merit, this Court (like the court in *Cantu*) agrees with the Johnson View because it is most consistent with the language of § 541(b)(7) and because it allows debtors to continue to make reasonable contributions to their retirement plans during the course of the Chapter 13 case. Though this approach leaves open the possibility that debtors will try to maximize their retirement contributions at the expense of unsecured creditors, this threat is counterbalanced by Chapter 13's good faith requirement and Chapter 7's dismissal for abuse provision.

20. Having considered how the Debtors' contributions to their retirement funds would be treated in a Chapter 13 case, we return to the original question posed by the UST – whether Debtors' case should be dismissed under § 707(b).

21. Section 707(b)(3) has two different grounds for dismissal – (i) bad faith, and (ii) if "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." Here, the Court does not believe that the Debtors' case should be dismissed on bad faith grounds. Though it is clear that the Debtors are putting their own interests ahead of their unsecured creditors by making substantial contributions to their retirement accounts and repaying retirement loans, under the Johnson View discussed above, they would have the right to deduct these post-petition payments and contributions in a Chapter 13 case. The Debtors have attempted to use the law to their

Case 17-27512-JKS    Doc 67    Filed 01/09/19    Entered 01/10/19 10:18:30    Desc Main
Document    Page 13 of 14

**Page 13**
Debtor:           Michael S. Gallichio and Barbara A. Gallichio
Case No.:         17-27512 JKS
Caption of Order: **Decision and Order Re: U.S. Trustee's Motion to Dismiss Case for Abuse**

maximum advantage and have been candid in this respect. The Court does not consider this to be bad faith.

22. But the Court also has to consider the totality of circumstances of the Debtors' financial situation. To overcome a motion to dismiss under § 707(b)(3), the Debtors are not expected to "live in poverty," but some "financial belt tightening" has to occur.[17]

23. As set forth above, a debtor's ability to repay debts from future earnings is a primary consideration in the totality of the circumstances analysis. And, where a debtor's income history and anticipated income and expenses demonstrate that a debtor has the ability to fund a Chapter 13 plan that pays at least some of his/her unsecured debt, granting a Chapter 7 discharge may constitute abuse.[18]

24. Looking at the facts of this case, the Debtors had over $118,000 in their retirement accounts as of the petition date. This amount has probably grown based on the Debtors' contributions during the course of the case. Going forward, the Debtors intend to continue to pay the following adjusted amounts towards their retirement (see chart at Paragraph 7 above).

```
$   688  (Mrs. Gallichio's retirement plan)
    507  (Mr. Gallichio's retirement plan)
    641  (Mr. Gallichio's deferred compensation)
    599  (Mr. Gallichio's retirement loan repayment)
$2,435   TOTAL
```

---

[17] *In re Ramsey,* 440 B.R. 85, 91 (Bankr. M.D. Pa. 2010).
[18] *See In re Wadsworth*, 383 B.R. 330, 333 (Bankr. N.D. Ohio 2007) ("Under any measure, a debtor having a stable annual salary of almost $100,000 will be hard pressed to establish that they do not have the ability to pay some of their unsecured debt, such as through funding a Chapter 13 plan."); *In re Pennington*, 348 B.R. 647, 651 (Bankr. D. Del. 2006) (dismissing case for abuse where below-median income debtors could have repaid 25% of unsecured debt); *In re Pittman*, 506 B.R. 496, 499 (Bankr. S.D. Ohio 2014) (finding abuse where debtor had sufficient income to make 24% distribution to unsecured creditors in Chapter 13 plan); *In re Stimmel*, 440 B.R. 782, 785 (Bankr. N.D. Ohio 2010) (dismissing case for abuse where debtor could have paid 22% dividend to creditors).

Case 17-27512-JKS    Doc 67    Filed 01/09/19    Entered 01/10/19 10:18:30    Desc Main
Document    Page 14 of 14

Page 14
Debtor:           Michael S. Gallichio and Barbara A. Gallichio
Case No.:         17-27512 JKS
Caption of Order: **Decision and Order Re: U.S. Trustee's Motion to Dismiss Case for Abuse**

In a Chapter 13 context, the Court would probably allow much of the total amount set forth above to remain as adjustments to the Debtors' projected income under the Johnson View, but not all of it under the facts here.

25. This is the Debtors' second Chapter 7 case. They received a discharge of their debts in February 2004 (Case No. 03-43988 NLW). Approximately 13 1/2 years later, the Debtors seek another discharge of over $60,000 of unsecured debt, the vast majority of which is based on credit card purchases. In the years before this case was filed, the Debtors received large amounts of goods and services on credit while they made discretionary payments to their retirement plans. Mrs. Gallichio actually increased her discretionary retirement fund contributions by 13% in the months before this bankruptcy filing. Though debtors should be encouraged to save for retirement, it should not be done at the expense of unsecured creditors.

26. The totality of the circumstances suggests that in a Chapter 13 case, the Debtors can pay off outstanding retirement fund loans, continue to make some discretionary contributions towards their retirement funds and pay a meaningful dividend to unsecured creditors. This is what should be done. If the Debtors are in agreement, they can convert this case to Chapter 13. If not, the Court will dismiss this case under § 707(b)(1) and (3)(B).

Now, therefore, it is hereby **ORDERED**:

1. For the foregoing reasons, the UST's motion to dismiss the case for abuse is granted in part. If the Debtors do not convert this case to Chapter 13 within 14 days, it will be dismissed.